WATERMAN, Justice.
In this appeal, the defendant asks us to overturn State v. Comried, which interpreted Iowa Code section 321J.2(1)(e) (2001) (operating while intoxicated (OWI) statute) to ban driving a motor vehicle with any detectible amount of a prohibited drug in one’s body, regardless of whether the ability to drive was impaired. 693 N.W.2d 773, 778 (Iowa 2005). This defendant was stopped for driving over the cen-terline and admitted to smoking half of a joint and being under the influence of marijuana. A drug screen detected a nonim-pairing metabolite of marijuana in his urine. He filed a motion to dismiss the OWI charge, arguing Comried is no longer good law because it relied on an Arizona decision and that state’s supreme court later held an OWI conviction cannot be based solely on the presence of a nonim-pairing metabolite. The district court disagreed, denied his motion to dismiss, and convicted him of violating section 321J.2. The court of appeals affirmed his conviction based on Comried, noting it “will not diverge from supreme court precedent.” We granted the defendant’s application for further review.
For the reasons explained below, we reaffirm Comried based on the plain mean *179 ing of the statutory text. The traffic stop and request for a urinalysis were lawful based on the defendant’s erratic driving and his admitted recent drug use and impairment. The defendant raises no constitutional challenge to the statute’s breadth, which permits a conviction based solely on the presence of a nonimpairing metabolite of. marijuana in the driver’s urine. Policy arguments that the statute is too harsh should be directed to the legislature..
I. Background Facts and Proceedings.
At 9:41. p.m. on June 20, 2014, Floyd County Deputy Sheriff Chad Weber was dispatched to Rockford City Park to respond to a report of narcotics activity involving a silver Hyundai Sonata. Upon arriving, he was approached by a man who reported smelling marijuana coming from a silver car and someone with dreadlocks driving off in that vehicle. Deputy Weber spotted a man with dreadlocks on foot and a silver Sonata backing out of a parking spot. Deputy Weber followed the silver Sonata. A check of the license plate number revealed the car’s registration was expired. He observed both left-side tires of the car crossing the centerline. Deputy Weber pulled the car over and identified the driver as Erik Childs. Deputy Weber’s report describes their encounter: ‘
I approached the vehicle and told the driver he was being stopped for crossing the center line and expired registration. I asked the driver where he had been tonight and he stated he was at the park playing basketball with his son. I then •told him that I had received a complaint of persons smoking marijuana in. that area in.a vehicle matching the description of this ■ vehicle. I then asked the driver if he was under the influence of drugs or alcohol. He said yes, in which I asked what substance and he said marijuana. I asked how much and he said half- a joint, I .asked how big the joint was and he held up his fingers showing me how big. . ■ ..
Deputy Weber also observed that when Childs “began to walk towards the back of the car [he] had his left hand on the vehicle to keep his balance.” Childs performed poorly on several field tests for sobriety, missing heel-to-toe steps and counting the number thirteen twice. At the police station, Childs consented to. a urine test, which revealed the presence of sixty-two nanograms per milliliter of a nonimpairing metabolite of marijuana, ll-nor-9-carboxy-delta-tetrahydrocannabinol (Carboxy-THC).[1]
Childs was charged with operating while intoxicated, first offense, in violation of Iowa Code section 321J.2(1)(a) (2014) (operating while under the influence of drugs) and (c) (operating a motor vehicle while “any amount of a controlled substance is present in the .-.. person’s blood or urine”). Childs filed a motion to dismiss, arguing he could not be convicted under section 321J.2 based solely on the presence of a nonimpairing metabolite of marijuana in his urine. Childs urged the court to overrule Comried, which interpreted section 321J.2(1)(c) (2001) to prohibit driving with “any amount” of a prohibited drug, that is, “any amount greater than zero.” 693 N.W.2d at 778. Comried was a statuto- *180 ^-interpretation case that relied on an Arizona decision addressing the same issue under the Arizona DUI statute. See id. at 775—76; see also State v. Phillips, 178 Ariz. 368, 873 P.2d 706, 708 (App. 1994). However, a later Arizona decision held “drivers cannot be convicted of [DUI] based merely on the presence of a non-impairing metabolite that may reflect the prior usage of marijuana.” State ex rel. Montgomery v. Harris, 234 Ariz. 343, 322 P.3d 160, 164 (2014). Childs argued that Phillips was no longer good law in Arizona, and accordingly, Comried should be overruled. Childs’s written motion asked for the statute to be reinterpreted to omit nonimpairing metabolites. At the hearing on the motion to dismiss, Childs echoed this argument:
We are asking for the case to be dismissed. When the Defendant was tested after he was pulled over and sobriety testing, he was found positive for a non-impairing metabolite of marijuana. Many states have already ruled this non-impairing metabolite is not a DUI; that only the impairing metabolite is.
[[Image here]]
[Phillips ] is the case that we actually based our OWI or marijuana law on, we used that case, and it’s cited throughout the case that decided that any amount of a controlled substance is an OWI in Iowa. They actually have distinguished that case, stating that ■ now it is the only—Only the impairing metabolite that is a DUI in [Harris ]. And based on the changes of law and based upon the fact that my client was not positive for the impairing metabolite, we are asking for the case to be dismissed.
The district court rejected this argument, stating,
Mr. Childs, again, your attorney is asking the Court to find that the law itself is unconstitutional; that there is no rational basis for the law here in Iowa.
I think that that’s a very, very high standard. I mean, to say that something is unconstitutional means that there is no—no reason at all to have this law in place, basically. And again, I think it’s an argument that I’m not going to agree with, but it’s something that could be appealed and maybe the Supreme Court or the Court of Appeals may find that they want to overturn this law and say that it’s not constitutional, but I’m not willing to do that.
I think that there is a rational basis to just say any marijuana in your system, whether it impairs you or not, that’s enough to say people shouldn’t be driving with that in their system.
Again, I understand the rationale of what your attorney is saying is that there should be some test as to whether or not it made you a bad driver, but Iowa hasn’t decided that that’s necessary. So, until someone tells me—someone else above me tells me it’s not constitutional, I’m going to And that it is.
So, I’m going to deny the Defendant’s Motion to Dismiss.
The district court filed a written order denying the motion to dismiss. Childs filed a motion to suppress, contending Deputy Weber lacked probable cause or reasonable suspicion for the traffic stop. The district court denied his motion, concluding the expired registration and driving over the centerline provided sufficient grounds. Childs ultimately was convicted on the minutes of testimony of operating while intoxicated, first offense, in violation of Iowa Code section 321 J.2.[2]
*181 Childs appealed, and we transferred the case to the court of appeals. Childs’s appellate briefs raise no constitutional challenge to section B21J.2. Rather, Childs makes the same statutory-interpretation argument on appeal as he did in district court—Comried should be overruled and the statute reinterpreted to omit nonim-pairing metabolites. The court of appeals rejected his arguments and affirmed his conviction. We granted Childs’s application for further review.
II. Standard of Review.
“On further review, we can review any or all of the issues raised on appeal or limit our review to just those issues brought to our attention by the application for further review.” Papillon v. Jones, 892 N.W.2d 763, 769 (Iowa 2017) (quoting Woods v. Young, 732 N.W.2d 39, 40 (Iowa 2007)). We elect to confíne our review to Childs’s statutory-interpretation claim. The court of appeals decision affirming the denial of his motion to suppress shall stand as the final decision on that claim.
‘We review rulings on questions of statutory interpretation for correction of errors at law.” State v. Iowa Dist. Ct., 889 N.W.2d 467, 470 (Iowa 2017) (quoting State v. Olutunde, 878 N.W.2d 264, 266 (Iowa 2016)). “Similarly, we review a ruling on a motion to dismiss for correction of errors at law.” Ney v. Ney, 891 N.W.2d 446, 450 (Iowa 2017).
III. Analysis.
A. Preservation of Error. In district court and on appeal, Childs makes the same statutory-interpretation argument: that we should overrule Comried and hold section 321J.2 is not violated by the presence of nonimpairing metabolites of marijuana in a driver’s urine. The district court described Childs’s argument as a constitutional challenge in the colloquy at the hearing on the motion to dismiss and rejected it. Childs makes no constitutional claim on appeal. The State’s appellate briefing acknowledges that Childs preserved error on his statutory challenge. We agree.
We do not construe the district court’s discussion of the constitutionality of the statute to mean the court overlooked Childs’s statutory-interpretation argument that the statute did not apply to driving with a nonimpairing metabolite. To the contrary, the district court necessarily rejected Childs’s statutory-interpretation argument when it orally ruled the statute constitutionally applied to him, denied his motion to dismiss, and later found him guilty of violating section 321J.2. The court of appeals reached the same conclusion, stating “the district court did not err in interpreting section 321J.2 to include marijuana metabolites and in denying the motion to dismiss.” See EnviroGas, L.P. v. Cedar Rapids/Linn Cty. Solid Waste Agency, 641 N.W.2d 776, 782 (Iowa 2002) (holding error was preserved on both prongs of challenge to applicability of statute, presuming district court resolved both, even though it only discussed one); Meier v. Senecaut, 641 N.W.2d 532, 539-40 (Iowa 2002) (discussing appellate principle that “we assume the district court rejected each defense to a claim on its merits, even though the district court did not address each defense in its ruling”); see also City of Riverdale v. Diercks, 806 N.W.2d 643, 655 (Iowa 2011) (concluding district court, by awarding attorney fees, must have rejected city’s good-faith defense to the fee award); cf. State v. Hellstern, 856 N.W.2d 355, 360 (Iowa 2014) (“We are to decide the statutory issue first in order to avoid unnecessary adjudication of constitutional claims.”).
State v. Mitchell does not support the conclusion that Childs waived his statutory *182 argument. 757 N.W.2d 431, 435 (Iowa 2008). Holly Mitchell was charged- with child endangerment because slie and her children lived with a registered sex offender. Id. at 434. Mitchell filed a motion to dismiss, raising two constitutional challenges (due process and equal protection) to the child endangerment statute. Id. at 435. The district court denied her motion by addressing only the equal protection claim. Id. We held Mitchell failed to preserve the due process claim for appellate review because she did not seek a ruling on that claim in district court before filing her appeal. Id. Mitchell is distinguishable; The district court in Mitchell could decide one constitutional claim without deciding the other. See id. The district court’s ruling rejecting the equal protection challenge was not implicitly dispositive of the due process claim. No statutory claim had been made. See id. at 434. By contrast, here, the district court could not uphold the constitutionality of the OWI statute as applied to Childs without necessarily interpreting the statute to apply to Childs.
The fact the State agrees Childs preserved error is another reason to conclude his statutory-interpretation claim is preserved for appellate review. See State v. Coleman, 890 N.W.2d 284, 286-87 (Iowa 2017) (relying on State’s concession that defendant preserved error). In its appellate briefing, the State recognized that Childs challenged the district court’s interpretation of Iowa Code section 321J.2 and that his “motion to dismiss and the district court’s ruling thereon preserved this issue for appellate review.” To hold otherwise would conflict with the lenient approach to error preservation in Coleman, which held the defendant preserved an argument under the Iowa Constitution for appellate review without mentioning the Iowa Constitution in district court. See id. at 286. Unlike the defendant in Coleman, Childs in fact made the same argument in district court in his motion to dismiss that he makes on appeal—an argument the district court ruled on by denying his motion and convicting him.
B. Statutory Interpretation—Com-ried Reaffirmed. We must decide whether to overrule Comried, which we decided twelve years ago. The district court and court of appeals correctly applied Comried, and Childs concedes that his conviction must be upheld if that case remains good law. We reaffirm Comried based on its reasoning, which applies the plain meaning of the operative statutory language.
The legislature recently amended the narcotics laws to allqw limited medical use of cannabis oil derived from marijuana, but chose to leave intact Iowa Code section 321J.2(1)(c).[3] Childs does not claim he had a valid prescription for medicinal marijuana. See Bearinger v. Iowa Dep’t of Transp., 844 N.W.2d 104, 107-08 (Iowa 2014) (discussing prescription drug defense), Nor does Childs claim he only had the metabolite in his urine from prior drug use days earlier, such that he was not driving under the influence. To the contrary, he exhibited signs of current impairment and admitted to smoking marijuana and driving under its influence. He does not argue on- appeal that the statute as interpreted in Comried is unconstitutional.
*183 Iowa Code section 321 J.2 provides that a person commits the offense of operating while intoxicated if the person “operates a motor vehicle in this state in any of the following conditions:” .
(а) While under the influence of an alcoholic beverage or other drug or a combination of such substances.
(б) While having an alcohol concentration of .08 or more.
(c) While any amount of a controlled substance is present in the person, as measured in the person’s blood or urine.
Id. § 321J.2(1)(a)-(c) (emphasis added). “Controlled substance,” ,in turn, is defined to include “any metabolite or derivative of the drug, -substance, or compound” listed in section 124.204. Id. § 321J.1(4) (emphasis added). Section 124.204 lists “[tjetrahy-drocannabinols ... meaning tetrahydro-cannabinol naturally contained in. a plant of the genus Cannabis” as a schedule I substance. Id. § 124.204(4) (u). Carboxy-THC is a metabolite of the tetrahydrocan-nabinol (THC) found in marijuana, a controlled substance.[4] Carboxy-THC is found in the mine of a person who has smoked or ingested marijuana. See Darron J. Hubbard, Comment, Narcotics on Illinois’s Roadways: Drugged Driving’s III Effects After Martin, 62 DePaul L. .Rev. 591, 605-07 (2013) (reviewing the process by which body converts THC into Carboxy-THC). Therefore, Carboxy-THC falls within the definition of a prohibited “controlled substance” under Iowa Code section 321 J.l.
In Comried, we interpreted the text of section 321J.2(1)(c) to prohibit driving with “any amount” of a controlled substance detectable in one’s body. 693 N.W.2d at 778. We observed that the legislature amended section 321J.2 in 1998 to create a per se ban on driving with any amount of a controlled substance in the body, “whether or not they are under- the influence.” Id. at 776; see also Bearinger, 844 N.W.2d at 107 (interpreting Comried and noting- section 321J.2 creates a per se ban “regardless of whether a person is ‘under the influence’ of that controlled substance” (quoting Comried, 693 N.W.2d at 776)). We noted the purpose of chapter' 321J is “to reduce the holocaust on’our highways.” Comried, 693 N.W.2d at 775 (quoting State v. Kelly, 430 N.W.2d 427, 429 (Iowa 1988)). Relying on Arizona and Indiana precedent, we stated,
The legislature could reasonably have imposed such a ban because the effects of drugs, as contrasted to the effects of alcohol, can vary greatly among those who use them. One court has observed that,
since the manufacture and distribution of illicit drugs are unregulated and because the drugs’ potency varies, the effects are unpredictable. Therefore, ... there is no'level of use above which people can be presumed impaired or below which they can be presumed unimpaired. '
Id. at 776 (alteration in original) (quoting Phillips, 873 P.2d at 708). We also relied on Iowa precedent:
Our court of appeals has reached a similar conclusion in a license-revocation case based on driving with controlled substances in the body. The court, noting the difficulty in relating the. amount of drugs in the body to driving impairment, said:
*184 Unlike the blood alcohol concentration test used to measure alcohol impairment there is no similar test to measure marijuana impairment. There is, though, as was used here, a test to measure the use of marijuana, a drug illegal in the State of Iowa, in a person’s body. There being no reliable indicator of impairment, the legislature could rationally decide that the public is best protected by prohibiting one from driving who has a measurable amount of marijuana metabolites.
Id. (quoting Loder v. Iowa Dep’t of Transp., 622 N.W.2d 513, 516 (Iowa Ct. App. 2000)).
Childs argues we should overrule Com-ried because one of the several decisions we relied on, Phillips, was subsequently narrowed by the Arizona Supreme Court in Harris. Harris, 322 P.3d at 164. Harris interpreted a subsection of that state’s OWI law to prohibit only substances that impair driving. Id. The next year, the Arizona Supreme Court clarified that the Arizona statute “casts a net that embraces drivers who have proscribed drugs or their impairing metabolites in their bodies but who may or may not be impaired,” while allowing a limited defense to patients certified for medicinal marijuana use who can prove they were not impaired. Dobson v. McClennen, 238 Ariz. 389, 361 P.3d 374, 377 (2015).
The Iowa legislature chose to cast a wider net, criminalizing driving with any amount of prohibited substances in one’s body, including the nonimpairing metabolite at issue commonly found in urine after marijuana use. The reasoning of Comried remains persuasive, as the operative text of the statute has not changed. See Iowa Code § 321J.2(c) (2014). Our court “may not ... enlarge or otherwise change the terms of a statute as the legislature adopted it.” State v. Iowa Dist. Ct., 730 N.W.2d 677, 679 (Iowa 2007) (alteration in original) (quoting State v. Miller, 590 N.W.2d 45, 47 (Iowa 1999)). “When a proposed interpretation of a statute would require the court to ‘read something into the law that is not apparent from the words chosen by the legislature,’ the court will reject it.” Id. (quoting State v. Guzman-Juarez, 591 N.W.2d 1, 2 (Iowa 1999)).
The premise for that legislative choice was the absence of reliable testing to determine whether a particular level of a narcotic impairs driving. That premise remains true today.
Unfortunately, there is no procedure comparable to the Standard Field Sobriety Test that a police officer can administer on a roadside to determine if a driver is under the influence of drugs. For example, marijuana diminishes a person’s temporal and spatial judgment, but the Standard Field Sobriety Test does not measure those effects. Police officers also rely on nystagmus to determine if a person is under the influence of alcohol, but drugs that dilate or constrict the pupils do not also cause nystagmus. There also is no device comparable to a breathalyzer to identify marijuana intoxication or the presence and amount of THC, the psychoactive ingredient in marijuana, in a driver’s blood. What is worse, even if that measurement could be done, there is no medical or scientific consensus regarding the amount of THC that would impair the average driver. That is true for a host of reasons, most of which stem from the fact that the relevant pharmaceutics are far more complicated for drugs than for alcohol.
Paul J. Larkin Jr., Medical or Recreational Marijuana and Drugged Driving, 52 Am. Crim. L. Rev. 453, 483 (2015) (emphasis added) (footnotes omitted). As the dissent in Harris recognized, “[T]he difficulty *185 of detecting drug impairment justifies a flat ban.” 322 P.3d at 165 (Timmer, J., dissenting). “Hydroxy-THC [impairing] converts quickly to Carboxy-THC [nonim-pairing] .... [A] driver with Carboxy-THC in the blood at the time of testing may or may not have had Hydroxy-THC in the blood while driving.” Id. A “flat ban ensures that a driver who had an impairing substance in the body while driving is prosecuted even though that substance may have quickly metabolized into a non-impairing substance.” Id.
The harshness of Iowa’s flat ban is ameliorated by the fact that the motorist would be asked to submit to chemical testing only after the officer performed a lawful traffic stop and had reasonable grounds to believe the driver was impaired. See Iowa Code § 321J.6(1) (setting forth grounds for chemical testing). In this case, for example, Childs was driving over the centerline, had trouble with his balance upon exiting his car, performed poorly on field tests for sobriety, and admitted he was under the influence of marijuana after smoking half of a joint.
Childs does not argue we should rely on the absurd-results doctrine. We disagree with any claim that Comried’s interpretation of the Iowa OWI law produces an absurd result. We have cautioned that “the absurd results doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said.” Sherwin-Williams Co. v. Iowa Dep’t of Revenue, 789 N.W.2d 417, 427 (Iowa 2010) (quoting 2A Norman J. Singer & Shambie Singer, Statutes and Statutory Construction § 45:12, at 105-07 (7th ed. 2007)); see also Bearinger, 844 N.W.2d at 110 n.3 (“The absurd-results doctrine should be used cautiously.”). We recently reiterated,
Establishing absurdity in an unambiguous statute is difficult for good reason. We have explained that “we will not ignore clear legislative language merely because it leads to a result that seems contrary to the court’s expectations.” The express language must produce a result that is “demonstrably at odds with the intention” of the legislature.
In re J.C., 857 N.W.2d 495, 503 (Iowa 2014) (citations omitted) (quoting Sherwin-Williams Co., 789 N.W.2d at 427, 429). It is not absurd for the legislature to enact a per se, or zero-tolerance, ban on driving with this marijuana metabolite in one’s body, given the absence of an available scientific test to determine what level of marijuana impairs driving.
Comried is not an outlier. Other states have interpreted equivalent OWI statutes to criminalize driving with any detectible amount of a prohibited drug, regardless of impairment. See Love v. State, 271 Ga. 398, 517 S.E.2d 53, 56, 57 (1999) (concluding that “a statute which makes it unlawful to drive while marijuana residue is circulating in the driver’s body fluids bears a rational relationship to ... protection of the public” but declaring law unconstitutional on equal protection grounds as prohibiting medicinal use); People v. Fate, 159 Ill.2d 267, 201 Ill.Dec. 117, 636 N.E.2d 549, 550, 551 (1994) (concluding a flat ban prohibiting “any amount of a controlled substance” was constitutional given that there was no standard for impairment); Bennett v. State, 801 N.E.2d 170, 176 (Ind. Ct. App. 2003) (“[A] flat ban on driving with any proscribed controlled substance in the body, whether or not capable of causing impairment, is permissible.”); Commonwealth v. Hutchins, 42 A.3d 302, 310 (Pa. Super. Ct. 2012) (“[A] conviction under [the OWI statute] does not require that a driver be impaired; rather, it prohibits the operation of a motor vehicle by any driver who has *186 any amount of specifically enumerated controlled substance in his blood.” (quoting Commonwealth v. Etchison, 916 A.2d 1169, 1174 (Pa. Super. Ct. 2007))); State v. Smet, 288 Wis.2d 525, 709 N.W.2d 474, 479 (App. 2005) (concluding “proof of impairment is not necessary” under OWI statute).[5]
Only three states with per se bans, Arizona (as discussed above), Delaware, and Michigan, distinguish between active and inactive metabolites. Delaware does so because its OWI statute expressly states that it is illegal to drive with “any amount of a substance or compound that is the result of the unlawful use or consumption of an illicit or recreational drug” and, in turn, defines that term as “not inelud[ing] any substance or compound that' is' solely an inactive ingredient or inactive metabolite of such drug.” Del. Code Ann. tit. 21, § 4177(a)(6), (c)(9) (West, Westlaw current through 81 Laws 2017, chs. 1-20). Iowa’s OWI statute lacks such an-exclusion for nonimpairing metabolites. See Iowa Dist. Ct., 730 N.W.2d at 679 (“Statutory text may express legislative intent by omission as well as inclusion.”).
Michigan courts have struggled with the interpretation of that state's OWI law. The Michigan statute criminalizes driving a motor vehicle with “any amount of a controlled substance listed in schedule 1 under section 7212 of the public health code.” Mich. Comp. Laws Ann. § 257.625(8) (West, Westlaw current through P.A. 2017, No. 50 of 2017 Reg. Sess. of 99th Leg.). Marijuana is a controlled substance. Id. § 333.7212(1)(c). In People v. Derror, the Michigan Supreme Court examined whether the legislature intended Carboxy-THC, a nonimpairing metabolite of marijuana, to be considered a controlled substance included in the OWI statute, 475 Mich. 316, 715 N.W.2d 822, 825 (2006), overruled by People v. Feezel, 486 Mich. 184, 783 N.W.2d 67, 86 (2010). The,-court held that because Carboxy-THC is “a metabolite of THC in that it is produced when the body metabolizes THC,” it was properly considered a “derivative” of marijuana.[6] Id. at 828. However, four years later, in Feezel, the court overruled Derror and concluded Carboxy-THC was not a derivative. 783 N.W.2d at 81, 86. The Feezel court noted the statutory definition was based on federal law and did not “contain the term ‘11-carboxy-THC’ ... [n]or do the statutes contain the term ‘metabolite.’” Id. at 83; see also 21 U.S.C. § 802(16) (2012). Three justices dissented in part, noting that the majority’s interpretation went against the *187 plain language of Michigan’s statute. Id. at 87 (Young, J., concurring in part and dissenting in part).
In subsequent decisions, a justice noted that “[t]he trouble caused by the Feezel decision is worthy of this Court’s serious attention.” People v. Soares, 488 Mich. 918, 789 N.W.2d 854, 855 (2010) (Corrigan, J., dissenting); People v. Barkley, 488 Mich. 901, 789 N.W.2d 441, 442 (2010) (Corrigan, J., dissenting). The decision left law enforcement “in a legal limbo” because they could “arrest if we find marijuana on you, but it’s different if we find marijuana in you.” Soares, 789 N.W.2d at 855 (quoting Tom Greenwood, Ruling Clouds Pot Smoking, Driving Law, The Detroit News, July 29, 2010). Barkley illustrated the problem:
This case well illustrates the potential confusion wrought by the Feezel decision. Defendant, who was driving -with THC in her system, ran. a stop sign and collided with a pick-up truck that had the right of way at the intersection. Two passengers in defendant’s car—her six-year-old son and her adult friend—were killed. As a result, a jury convicted defendant of two counts of negligent homicide and one count of operating a motor vehicle and causing death while having a controlled chemical substance (marijuana) in her body, MCL 257.625(4) and. (8). Under Derror, defendant’s guilt of this last offense was clear. But Feezel. sir tempts to distinguish one metabolite of marijuana, 11-earboxy-THC, and prohibit it from being dubbed a controlled substance. Accordingly, the nature of defendant’s offense is now unclear. An expert testified' that defendant’s urine contained a sufficient amount of THC— at least 50 nanograms per milliliter—to test positive for the substance. But it is unclear from the record provided to this Court which metabolite or metabolites of THC were measured. All metabolites of THC indicate ingestion of marijuana, and defendant did not contest at trial which metabolite or metabolites appeared in her system.
789 N.W.2d at 442.
Unlike the Michigan statute, the Iowa legislature expressly added the words, “including tetrahydrocannabinols,” the psychoactive component of marijuana to the controlled-substances statute. Iowa Code § 124.101(19). Moreover, our OWI statute expressly criminalizes metabolites of that component in a way the Michigan statute did not. Compare Iowa Code § 321J.1(4), with Mich. Comp. Laws Ann. § 257.625. Accordingly, the Michigan cases do not support revisiting' Comried. We apply the Iowa statute as written and leave it to the legislature whether to revisit the zero-tolerance ban on driving with even nonim-pairing metabolites of marijuana.
IV. Disposition.
For these reasons, we affirm the decision of the court of appeals and affirm the district court’s judgment, conviction, and sentence.
DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.
All justices concur except Cady, C.J., who concurs specially, Hecht, J., who dissents, and Appel, J., who separately dissents.

. Carboxy-THC is a secondary metabolite of Tetrahydrocannabinol, the primary psychoactive component of cannabis. See Priyamvada Sharma et al., Chemistry, Metabolism, & Toxicology of Cannabis: Clinical Implications, 7 Iran J. Psychiatry 149, 151 (2012) (listing the components of cannabis). Carboxy-THC can be detected in the body more than three weeks' after the impairing effects of marijuana have dissipated. Id. at 152. It is produced through the metabolic breakdown of 11-hy-droxy-THC (Hydroxy-THC), the most significant psychotropic metabolite of THC. Id. at 151.

. Although the information charged Childs under both sections (a) and (c) of Iowa Code section 321J.2(1), the judgment of conviction did not specify whether the district court found him guilty under one or both of the subsections.

. See H.F. 524, 87th G.A., 1st Sess. §§ 4-21 (Iowa 2017) (to be codified at Iowa Code §§ 124E.1-.17) (extending Medical Cannabi-diol Act). Three years earlier, Iowa legalized a limited medical cannabis oil program. See 2014 Iowa Acts ch. 1125 §§ 2-10 (enacting Medical Cannabidiol Act, allowing certain medicinal use) (codified at Iowa Code ch. 124D (2015)); see also Iowa Code § 124.204(7) ("This section does not apply to marijuana, tetrahydrocannabinols or chemical derivatives of tetrahydrocannabinol when utilized for medicinal purposes pursuant to rules of the board [of pharmacy].”),

. Section 124.204 also lists "marijuana" as a prohibited drug. Iowa Code § 124.204(4)(m) (listing marijuana as a schedule I substance). Marijuana, as defined by the legislature, broadly includes "every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin, including tetrahydrocannabinols.” Id. § 124.101(19).

. According to a study sponsored by the National Highway Traffic Safety Administration, seventeen states have variations of zero-tolerance legislation. Nat’l Highway Traffic Safety Admin., U.S. Dep’t of Transp,, A State-by-State Analysis of Laws Dealing With Driving Under the Influence of Drugs 4, https://www.ems.gov/ pdf/811236.pdf. Twelve states have laws similar to Iowa’s, criminalizing driving with any amount of a prohibited drug in the body. See id. Three states (Ohio, Nevada, and Virginia) criminalize driving with specified amounts of enumerated prohibited drugs in the body. Id. Courts in two of those states have upheld the per se bans, regardless of actual impairment. See Williams v. State, 118 Nev. 536, 50 P.3d 1116, 1120-22 (2002); State v. Topolosky, No. 15AP-211, 2015 WL 7737686, at *6 (Ohio Ct. App. Dec. 1, 2015).

. The court examined the term "derivative” under various medical dictionaries and concluded the term meant "a chemical substance related structurally to another substance and theoretically derivable from it.” Derror, 715 N.W.2d at 828 (quoting Derivative, Merriam-Webster’s Online Medical Dictionary (Mar. 8, 2006)). The court pointed out that THC and Carboxy-THC “are identical except that in [Carboxy]-THC, two oxygen atoms are added to and three hydrogen atoms are removed from the eleventh Carbon to make it more water soluble and easier to excrete.” Id. The court concluded Carboxy-THC qualified because it "is a chemical compound produced when the body metabolizes THC, which is a compound of similar structure.” Id.