# IN THE COURT OF APPEALS OF IOWA

No. 19-1850
Filed December 16, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DENG G. MAJOUK,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Christopher Kemp (suppression) and William A. Price (trial), District Associate Judges.

Deng Majouk appeals the district court's entry of judgment, sentence, and denial of his motion to suppress evidence. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Katie Krickbaum, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, and Tabor and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

Deng Garang Majouk, found guilty of operating a motor vehicle while under the influence, appeals the district court's denial of his motion to suppress evidence gained during a stop of his vehicle.

**I.    *Background Facts and Proceedings***

Early one morning, a Clive police officer stopped Majouk for having his high beams on and a brake light out and for driving seven miles over the speed limit. The officer observed a cup in the center console containing what appeared to be tobacco.  Majouk appeared to be under the age of eighteen, raising a suspicion of under-age tobacco use.  The officer also spied a green stalk in the container, which was "consistent with marijuana."   He asked Majouk whether there was any marijuana in the car.  Majouk responded, "no."  The officer told Majouk to step out, said he intended to search the car, and asked whether he would find any marijuana.  Again, Majouk responded "no."  The officer patted Majouk down for weapons and said he could sit in the rear passenger seat of his patrol car.  The officer said the vehicle search would be "real quick."  Majouk was not handcuffed, and the rear car door was left open.

After Majouk seated himself, the officer asked, "[Y]ou haven't smoked anything tonight?  Not even earlier?"  At that point, Majouk admitted he smoked marijuana "a couple of hours ago."  When Majouk asked if it was a problem, the officer responded "when you become impaired and you get behind the wheel and you're driving, that's an OWI, it could be an OWI."  The officer reiterated his intention to "search his car real quick" and said "if he did not find anything he was gonna make sure [Majouk] was valid to drive and stuff and [he would] get [him] out

of here." The officer found nothing except a few "crumbs" in the back seat. He advised Majouk he would run "a couple tests" to make sure Majouk was "not too high to be driving around." The officer administered three field sobriety tests. Majouk showed no signs of impairment on the horizontal gaze nystagmus test but failed the "walk and turn" and "one leg stand" tests.

The State charged Majouk with operating a motor vehicle while intoxicated, first offense. Majouk filed a suppression motion. The officer testified he placed Majouk in his patrol car for safety reasons. The district court denied the suppression motion and found Majouk guilty on the minutes of testimony. The court sentenced Majouk. The sentence included a fine of $1250.

On appeal, Majouk contends (A) the district court abused its discretion in failing to suspend the fine; (B) the district court should have granted his suppression motion; and (C) the evidence was insufficient to support the district court's finding of guilt.

## II. Analysis

### A. Fine

At sentencing, the district court informed Majouk he was "fined the amount of $1250 . . . that's required by law." Majouk contends the court "had discretion to suspend his fine . . . but does not appear to have exercised that discretion." *See State v. Ayers*, 590 N.W.2d 25, 27 (Iowa 1999) ("When a sentencing court has discretion, it must exercise that discretion.").

Iowa Code section 321J.2(3)(c) (2019) states, "A first offense is punishable by… [a]ssessment of a fine of one thousand two hundred fifty dollars." Section 907.3(3)(c)(4) prohibits the suspension of "any part of a sentence not involving

incarceration imposed pursuant to section 321J.2, subsection 3, 4, or 5, beyond the mandatory minimum if . . . the defendant refused to consent to testing requested in accordance with section 321J.6."[1]

The Clive police officer who stopped Majouk reported that "Majouk refused to provide a urine sample for testing." Majouk's test refusal triggered the prohibition on suspension of the fine set forth in section 907.3. *Cf. State v. Kramer*, 773 N.W.2d 897, 898 (Iowa Ct. App. 2009) ("[W]hen none of the circumstances enumerated in [a predecessor to section 907.3] that prohibit suspension of a fine apply, the district court has discretion to suspend the fine portion of the sentence in an [operating while intoxicated] first offense conviction under Iowa Code section 321J.2(2)(a)."). We conclude the district court had no discretion to suspend the fine.

### B. Suppression Ruling

Majouk contends the district court should have suppressed his admission to consumption of marijuana. In his view, the admission was made while he was in custody and without the benefit of *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S.436, 471, 478–79 (1966) ("[W]e hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant

---

[1] Iowa Code section 321J.6(1) states:
> A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 or 321J.2A is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of a controlled substance or other drugs, subject to this section.

way and is subjected to questioning, the privilege against self-incrimination is jeopardized," and stating the person "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires"). "*Miranda* warnings are only required if, at the time of police questioning, the suspect is both: (1) in custody, and (2) subject to interrogation." *State v. Tyler*, 867 N.W.2d 136, 171 (Iowa 2015) (citing *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984)). The State concedes Majouk was interrogated, leaving only the question of whether he was in custody when he admitted to marijuana use.

"For purposes of the Fifth Amendment, a suspect is in custody 'as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest.'" *Id.* (citation omitted). "[T]he only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his [or her] situation." *State v. Turner*, 630 N.W.2d 601, 607 (Iowa 2001). The court considers four factors in making this determination: "(1) the language used to summon the individual; (2) the purpose, place, and manner of interrogation; (3) the extent to which the defendant is confronted with evidence of her guilt; and (4) whether the defendant is free to leave the place of questioning." *State v. Countryman*, 572 N.W.2d 553, 558 (Iowa 1997).

The district court thoroughly analyzed the *Countryman* factors. The court's analysis finds support in several unpublished court of appeals opinions. On the first factor, the court found "the language used to summon Mr. Majouk was not aggressive or commanding"; "Majouk was not placed in handcuffs during this time";

and the officer "did not place hands on Mr. Majouk or provide any physical assertion of control." *See State v. Plager*, No. 03-0619, 2004 WL 144122, at *2–3 (Iowa Ct. App. Jan. 28, 2004) (agreeing with the district court that the language used by the officer to summon the defendant to the front seat of the patrol car was "not threatening or intimidating" and the defendant "was not handcuffed"); *cf. State v. Williams*, No. 18-1735, 2019 WL 6358423, at *4 (Iowa Ct. App. Nov. 27, 2019) (noting the deputy's tone "was conversational, albeit punctuated with statements of incredulity"). Turning to the "purpose, place, and manner of the interrogation," the court found the officer "directed Mr. Majouk back to the squad car and had him take a seat because he was about to conduct a probable cause search of Mr. Majouk's vehicle." The court noted that the "interrogation took less than a minute and was not a confrontational encounter." *See State v. Plager*, No. 03-0619, 2004 WL 144122, at *4 (Iowa Ct. App. Jan. 28, 2004) ("The mere fact that [the officer] asked [the defendant] to come back to his patrol car, while he checked the status of his driver's license, did not transform an ordinary traffic stop into custodial interrogation."); *see also State v. Page*, No. 16-1404, 2017 WL 4049495, at *2 (Iowa Ct. App. Sept. 13, 2017) (noting trooper asked the defendant "to come back to his squad car in order to allow the officer to run his information through the in-car computer and so [the defendant] could sign his citation"). As for the third factor, the court acknowledged Majouk was "confronted with evidence of his guilt" but only "before the two walked back to the squad car, when the officer explained at the original interaction that 'I know what that stuff is, have you been smoking weed at all tonight?'" *Page*, 2017 WL 4049495, at *2 (noting "the defendant was only 'briefly confronted with the evidence of his guilt when the Deputy indicated

that he had a strong odor of alcohol coming from his person'" (citation omitted)). Finally, the court noted that the officer "kept the back door open during their brief conversation." *See State v. Ewalt*, No. 17-1189, 2018 WL 5292090, at *4 (Iowa Ct. App. Oct. 24, 2018) (noting that while the defendant sat in the front passenger seat of the patrol car, "the doors of the patrol car remained unlocked"). The court concluded Majouk was not in custody when he was interrogated and, accordingly, his admission without the benefit of prior *Miranda* warnings was admissible. On our de novo review, including a review of the officer's body camera footage, we agree with the court's reasoning. We conclude Majouk's statement was not the product of an unconstitutional custodial interrogation.

In reaching that conclusion, we have considered the officer's safety rationale for placing Majouk in the patrol car. Although he had previously patted down Majouk for weapons, the officer testified it was department practice to have a person sit in the patrol car during a "probable cause search" rather than "stand[]" or "mill[] about." We also have considered the officer's persistent questioning of Majouk about his consumption of marijuana. Because we are obligated to apply an objective standard to the custody determination, the officer's subjective intent does not control the outcome. Notably, even after Majouk admitted to consuming marijuana, the officer advised him he would be free to leave after the search was completed if he was not impaired. A reasonable person in Majouk's circumstances would not have believed he or she was in custody. Accordingly, we affirm the district court's denial of Majouk's suppression motion.

### C.     Sufficiency of the Evidence

The district court found Majouk "guilty of operating while intoxicated . . . in that he was operating under the influence of a drug that being marijuana."  *See* Iowa Code § 321J.2(1)(a) (requiring proof that a person was operating a motor vehicle "[w]hile under the influence of an alcoholic beverage or other drug or a combination of such substances").  Majouk contends "the minutes of testimony were not sufficient to establish that he was operating a motor vehicle while under the influence of marijuana."

"The conduct and demeanor of a person are important considerations in determining whether a person is 'under the influence' under section 321J.2(1)(a)." *State v. Myers*, 924 N.W.2d 823, 831 (Iowa 2019).  Our review is for substantial evidence.  *See State v. Folkers*, 941 N.W.2d 337, 338 (Iowa 2020).

The usual signs of intoxication were absent.  *See State v. Gordon*, No. 15-2038, 2017 WL 5185401, at *3 (Iowa Ct. App. Nov. 8, 2017) (citing witnesses' belief that the defendant was under the influence of marijuana based on his "lack of eye convergence, rebound dilation of the pupils, marked reddening of the conjunctiva, eyelid tremors, a high pulse, and high blood pressure" as well as his "red bloodshot eyes" that "were a little glossy").  The officer did not comment on Majouk's appearance or demeanor, and the body camera footage discloses prompt and appropriate responses to the officer's questions.  That said, Majouk showed signs of impairment on two of the three field sobriety tests.  *See State v. Pieper*, 432 N.W.2d 701, 704 (citing the defendant's failure of field sobriety tests as evidence of driving under the influence).  Those signs together with Majouk's admission to marijuana consumption two hours earlier amount to substantial

evidence in support of the district court's finding of guilt. *Cf. State v. Childs*, 898 N.W.2d 177, 185 (Iowa 2017) (noting "Childs was driving over the centerline, had trouble with his balance upon exiting his car, performed poorly on the field tests for sobriety, and admitted he was under the influence of marijuana after smoking half a joint"); *State v. Hamilton*, No. 16-1568, 2017 WL 5185429, at *2 (Iowa Ct. App. Nov. 8, 2017) (finding sufficient evidence of the under-the-influence element based on the defendant's erratic driving, evasion of police, red eyes, unsteadiness on his feet, slurred speech, and the smell of burnt marijuana on breath); *State v. Adams*, No. 02-0523, 2003 WL 22015791, at *1 (Iowa Ct. App. Aug. 27, 2003) (finding sufficient evidence of operating while under the influence of marijuana based on "a strong smell of marijuana" in the car, "watery, bloodshot eyes, dilated pupils, and impaired balance," erratic driving, and failure of all field sobriety tests). We affirm the finding of guilt and Majouk's judgment and sentence.

**AFFIRMED.**