# IN THE COURT OF APPEALS OF IOWA

No. 22-2001
Filed January 25, 2023

**IN THE INTEREST OF A.M.,**
**Minor Child,**

**M.M., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Matthew W. Boleyn of Boleyn Law, P.C., Dubuque, for appellant mother.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Kristy L. Hefel of the Dubuque Public Defenders Office, Dubuque, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of both parents of A.M., who was eleven months old at the time of the termination hearing. The parents' rights were terminated pursuant to Iowa Code section 232.116(1)(h) (2022). Only the mother appeals. She contends the court should have granted her request for additional time to work toward reunification.

We conduct de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process that involves determining if at least one statutory ground for termination has been established, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). However, in instances like this where the parent does not raise a claim relating to any of the three steps, we do not address them and instead limit our review to the specific claim presented. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (recognizing we do not consider a step the parent does not challenge).

The juvenile court may grant a parent an additional six months to work toward reunification instead of terminating the parent's rights. Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving the parents an additional six months). The mother claims the court should have taken this route. However, for the court to grant additional time to work toward reunification, it must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise

the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

Besides being born with a metabolite of marijuana in his system,[1] the child has spent most his life hospitalized due to being born with significant heart issues. As a result of his medical condition, the child has significant health needs beyond those of a typical infant and requires an unusual level of attentiveness and care. It is not an exaggeration to say that remaining vigilant to meet the child's health needs is a matter of life and death. Despite the life-and-death peril, the mother has historically not been willing or able to provide even a threshold level of attentiveness and care. The mother only visited the child three times during his five-month-long hospital stay. She did not complete necessary education on the child's medical needs, which was required for him to be released from the hospital and into her care. Medical providers made clear that failure to attend to the child's medical needs could be fatal to the child. Yet the mother repeatedly failed to attend his medical appointments and could not be reached for two days while hospital staff sought her consent to the child's heart surgery. During a visit with the child, the service provider supervising visitation reminded her several times of the child's feeding and medication schedule. Even with the supervision and prompting provided, the mother did not administer the medication to the child. Eventually,

---

[1] The child tested positive for THC at birth. THC stands for tetrahydrocannabinol, which is a metabolite of marijuana. *See State v. Childs*, 898 N.W.2d 177, 183 (Iowa 2017); *see also* Iowa Code §§ 124.101(20) (defining marijuana to include "every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin, including tetrahydrocannabinols"), .204(4)(m) (listing marijuana as a schedule I controlled substance).

the service provider had to physically intervene to provide medication to the child properly.

The mother contends the need for removal will soon be gone because she has resolved her transportation issues, which she claims was the remaining obstacle that prevented her from visiting more often and eventually resuming care of the child. This highlights the mother's lack of insight on her current parenting limitations when it comes to the child and his needs. She lacks sufficient appreciation of the specialized care the child requires, and without that she will not be a safe caregiver for this child. The mother also complains that termination would separate the child from his twin.[2] While attempting to avoid the potential separation of siblings may be a factor in considering whether termination is in the child's best interests,[3] it is not a statutory basis for granting additional time. Instead, we look to see if there is reason to believe the parent will improve to the point the child can be returned to the parent's care. *See id.* Unfortunately, our review of the record reveals no basis to believe the mother's parenting ability will improve to the point the child can be returned to her care in the next six months. *See In re Z.H.*, No. 20-0067, 2020 WL 2065949, at *2 (Iowa Ct. App. Apr. 29, 2020) ("Because we cannot find that the need to eliminate the children's removal will be eliminated if the mother and father are granted another six months, we decline to

---

[2] The child's twin has been adjudicated as a child in need of assistance.

[3] As previously noted, the mother has not challenged the best-interests step of the termination analysis. Even if she had, we find termination is still in the child's best interests, as the undesirability of separating the twins is outweighed by the need to meet the child's medical needs. We agree with the juvenile court's observation that "[w]hile separating twins is certainly not a desired outcome, . . . the priority in the present situation is maintaining [the child]'s life, not the twin sibling relationship."

delay termination.  The past is prologue to the future.").  So we do not grant her additional time to work toward reunification.

**AFFIRMED.**