# IN THE COURT OF APPEALS OF IOWA

No. 22-0337
Filed March 8, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ASHLEY NICOLE HENNINGS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, David Porter, Judge.


        A defendant appeals her convictions for vehicular homicide, leaving the scene of an accident, and eluding; she also challenges the sentencing order. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


        Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau (until withdrawal) and Maria Ruhtenberg, Assistant Appellate Defenders, for appellant.

        Brenna Bird, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.


        Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**TABOR, Presiding Judge.**

Ashley Hennings challenges her convictions for vehicular homicide, leaving the scene of an accident, and eluding. She raises three issues: (1) Was she entitled to an alternative jury instruction on causation? (2) Should the district court have granted her a new trial? And (3) did the court violate the one-homicide rule? On the first claim, we find the court adequately instructed the jury on causation. For the second, we find the court properly exercised its discretion in ruling that the weight of the evidence supported the verdicts. But turning to the third claim, we remand for entry of a corrected sentencing order.

## I.      Facts and Prior Proceedings

"Brace for impact," Erick Richter told his wife Shirlyna as they watched Hennings's Chrysler minivan barrel through a major intersection, ram a red sedan, and come "flying" toward their car. Two police cars were chasing Hennings after she sped away from a traffic stop initiated by Officer Brian Foster. A second officer, Alberto Marquez, clocked her speed at ninety miles per hour on Des Moines city streets.

After ramming the sedan and hitting the Richters' car, Hennings's van flipped over, smashed into a tree, and came to rest on its side, catching fire. Bystanders pulled Hennings from the smoking wreckage. She then fled on foot. But she didn't get far. Witnesses pointed Officer Chase Lohnes in the direction she had run. And he located her about a block from the crash scene. Seeing her injuries, Lohnes took her to a nearby fire station. From there, an ambulance transported her to the hospital where staff drew her blood. It tested positive for methamphetamine.

Meanwhile, Officer Foster raced to the crash scene—finding Kieran Stirling unconscious and struggling to breath inside his badly damaged red sedan. Foster supported Stirling's neck while waiting for medics. But Stirling never regained consciousness and died later at the hospital.

In a four-count trial information, the State charged Hennings with (1) homicide by vehicle—operating while intoxicated, in violation of Iowa Code section 707.6A(1) (2021), a class "B" felony; (2) homicide by vehicle—reckless driving, in violation of section 707.6A(2)(A), a class "C" felony; (3) leaving the scene of an accident resulting in death, in violation of sections 321.261(4) and 321.263, a class "D" felony; and (4) eluding in violation of section 321.279(3)(A)(3) and (4), a class "D" felony. After a three-day trial, a jury found Hennings guilty of all four counts. She now appeals.

## II.  Scope and Standards of Review

We review the refusal to give a requested jury instruction for the correction of legal error. *State v. Montgomery*, 966 N.W.2d 641, 649 (Iowa 2021). We apply this same standard to review a challenge to a merger decision. *State v. Ceretti*, 871 N.W.2d 88, 92 (Iowa 2015). By contrast, we review the denial of a new-trial motion for an abuse of discretion. *State v. Linderman*, 958 N.W.2d 211, 218 (Iowa Ct. App. 2021). And on a weight-of-the-evidence claim, we limit our review to the district court's exercise of discretion—leaving alone the underlying question whether the scales tipped against the verdicts. *Id.*

### III.  Analysis

### A. Causation Instruction

Up first, Hennings contends that the jury received inadequate instructions on the causation element of homicide by intoxicated operation.  She faults the district court for rejecting her proposed instruction—borrowed from *State v. Hernandez-Mendoza*, No. 18-0083, 2019 WL 1932539, at *5 n.6 (Iowa Ct. App. May 1, 2019).  To assess her contention, we look first to the marshalling instruction.  The second element required the jury to find that Hennings's act of operating while having methamphetamine in her system *caused* Stirling's death.

INSTRUCTION NO. 12

As it relates to **Count I** of the Trial Information, the State must prove the following elements of **Vehicular Homicide, by Operating a Motor Vehicle While Intoxicated**:

1. On or about May 13, 2021, the defendant operated a motor vehicle while having any amount of a controlled substance present in her body, as measured in her blood;

2. The defendant's act of operating a motor vehicle while having any amount of a controlled substance present in her body unintentionally caused the death of Kieran Stirling.

If the State has proven all of these elements, the defendant is guilty as charged in Count I of the Trial Information.

If, however, the State has proven element #1, but failed to prove element #2, the defendant is guilty of Operating a Motor Vehicle While Intoxicated.

If the State has failed to prove element #1, the defendant is not guilty as charged in Count I of the Trial Information.

Another instruction clarified that causation element.

INSTRUCTION NO. 17

The conduct of the defendant is a "cause" of death when the death would not have happened except for the conduct.

But Hennings requested yet another instruction on causation, arguing to the district court that "the instructions need to reflect that there should be and must be a substantial causal connection between impairment and Mr. Stirling's death."[1] The district court rejected Hennings's request, reasoning that it was "nowhere near a model instruction." And that it was "duplicative" of Instructions No. 12 and 17, which accurately conveyed the causation requirement.

Hennings challenges that rejection. She asserts the jury needed more guidance on causation. She points to its question during deliberations: "On Count 1, do we need to prove the presence of the substance had any impact on her driving ability or influence the likelihood of a crash? Does this matter?"[2]

But Hennings does not explain how the *Hernandez-Mendoza* instruction would have answered the jury's question. The first paragraph of that instruction, on factual causation—traditionally called but-for causation—was embodied in Instruction No. 17. *See id.* at *2; *see also State v. Adams*, 810 N.W.2d 365, 371

---

[1] Our record does not include a copy of Hennings's proposed instruction. But here is the instruction from the *Hernandez-Mendoza* footnote:

> The State must prove a causal connection between the act or acts of Ramon Hernandez and the death of [Y.A.]. The alleged acts or conduct of Ramon Hernandez "caused" the death of [Y.A.] when her death would not have happened except for the acts or conduct. . . .
>
> The State must also prove that the death of [Y.A.] was within the scope of Ramon Hernandez's criminal responsibility. The death is within the scope of criminal responsibility if that death arises from the same types of danger created by Ramon Hernandez's act or acts. You should consider whether repetition of Ramon Hernandez's act or acts would make it more likely that the death of [Y.A.] would happen. If Ramon Hernandez's act or acts would not make [Y.A.'s] death more likely to occur, they are not within the scope of his criminal responsibility.

2019 WL 1932539, at *5 n.6 (alterations in original).

[2] The court instructed the jury to reread the instructions and continue deliberating.

(Iowa 2012) (interpreting section 707.6A(1) as requiring proof of causal connection between specific criminal act—"intoxicated driving"—and victim's death, but not proof of "a specific causal connection between the defendant's intoxication and the victim's death"). The second paragraph, on scope of criminal responsibility— traditionally called proximate cause—applies only if the chain of causation is attenuated. *See State v. Tyler*, 873 N.W.2d 741, 749 (Iowa 2016), *superseded by statute on other grounds.* And even then, *Tyler* did not settle whether "criminal causation might still require *more than* proof of but-for factual causation." *Id.* at 750.[3] So with only a passing mention of our supreme court's civil cases on scope of liability, Hennings's brief does not address how her proposed instruction was proper or necessary on these facts.

Without that advocacy, we are left with the district court's well-supported conclusion that the existing instructions tracked *Adams* and properly conveyed the concept of causation to the jury. Thus, we find no instructional error.

## B. Greater Weight of the Evidence

Hennings next contests the district court's denial of her motion for a new trial on the convictions of homicide by intoxicated operation and leaving the scene of a fatal accident. A new trial is appropriate only when the evidence preponderates heavily against the jury's verdicts. *State v. Ernst*, 954 N.W.2d 50, 60 (Iowa 2021). That standard allows the district court to make its own credibility

---

[3] *Tyler* cites *Adams*, 810 N.W.2d at 372 n.7, where our supreme court also declined to decide whether the proximate cause doctrine had continuing viability in criminal cases after the supreme court's embrace of the Restatement (Third) of Torts in *Thompson v. Kaczinski*, 774 N.W.2d 829, 839 (Iowa 2009). *Tyler*, 873 N.W.2d at 748–50.

determinations. *Id.* The court must decide whether "a greater amount of credible evidence" suggests the verdicts were a miscarriage of justice. *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998). We will consider each challenged verdict in turn.

### 1. Homicide by Intoxicated Operation

To convict Hennings of this offense, the jury had to find two elements: (1) Hennings operated a motor vehicle while having any amount of a controlled substance in her body. *See* Iowa Code § 707.6A(1). And (2) her criminal act unintentionally caused the death of Kieran Stirling. *See id.* § 707.6A(1). Hennings does not dispute that she was operating her van and her blood tested positive for methamphetamine. Rather, she claims the State "produced no evidence that she was under the influence of a controlled substance at the time of the accident."

Her claim fails for two reasons. First, the State was not required to prove Hennings was "under the influence of a controlled substance" when she was operating the van. "Iowa's homicide-by-intoxicated-operation statute makes it a crime to unintentionally cause someone's death 'by operating a motor vehicle while intoxicated, as prohibited by section 321J.2.'" *State v. Johnson*, 950 N.W.2d 232, 236 (Iowa 2020). "The definition of 'intoxicated' . . . means a person is under the influence of alcohol or drugs (or some combination of them), has a blood alcohol content .08 or greater, *or* has any amount of a controlled substance present as measured in a blood or urine test." *Id.* (emphasis added). The State prosecuted Hennings using that third definition of intoxication. *See* Iowa Code § 321J.2(1)(c). That section criminalizes operating with "any amount of prohibited substances in one's body" whether or not those substances impair the operator. *See State v. Childs*, 898 N.W.2d 177, 184 (Iowa 2017). So it was enough for the State to prove

a causal connection between Hennings's criminal offense—operating with any controlled substances present in her blood—and Stirling's death. Contrary to Hennings's claim, the State was not required to prove that the methamphetamine in her system "in any way influenced" her driving. *See id.* at 183 (reaffirming *State v. Comried*, 693 N.W.2d 773, 776 (Iowa 2005)). Indeed, our courts have interpreted section 321J.2(1)(c) as creating "a per se ban on driving with any amount of a controlled substance in the body, whether or not [drivers] are under the influence." *Childs*, 898 N.W.2d at 183 (citations and quotations omitted).

Second, if the State needed to prove that Hennings was under the influence of methamphetamine, the district court did not abuse its discretion in finding credible evidence to support that she was. Criminalist Justin Grodnitzky testified that the state crime lab detected 496 nanograms of methamphetamine per one milliliter of Hennings's blood. He said that amount fell in the average range for impairment cases. And he explained that when this drug is prescribed for conditions such as ADHD, it is at a therapeutic level of twenty nanograms per milliliter. The district court determined that credible evidence supported the jury's verdict: "A reasonable jury could conclude that having twenty-five times the therapeutic level of methamphetamine in a person's system may have a negative impact on that person's physical condition, including their ability to safely operate a motor vehicle." On top of the lab report, the court pointed to Hennings's erratic behavior in recorded interactions with Officer Foster.

On this record, we cannot say the district court abused its discretion in denying Hennings's motion for a new trial. *See Ernst*, 954 N.W.2d at 61.

### 2. Leaving the Scene of a Fatal Accident

To convict Hennings of this offense, the jury had to find five elements: (1) Hennings drove a vehicle involved in an accident resulting in Stirling's death; (2) she knew about the accident; (3) she knew the accident resulted in injury or death or knew the accident was "of such a nature" that a reasonable person would expect that injury or death occurred to another person; (4) Hennings failed to stop her vehicle at the scene of the accident or as close as possible to the scene or failed to return to and remain at the scene though able to do so; and (5) after the accident, Hennings failed to: (a) leave her driver's license, registration, or other identification data at the scene of the accident; or (b) promptly report the accident to law enforcement authorities after leaving the scene. *See* Iowa Code §§ 321.261(4), .263.

Hennings takes aim at the State's proof for elements (4) and (5). On the fourth element, Hennings recounts the evidence that her van was disabled and asserts that she was "directed by law enforcement away from her vehicle due to the explosion risk."[4] On the fifth element, she contends that the State did not offer evidence that she failed to provide information. Citing *State v. Tarbox*, she insists that she did not fail to report the accident because police were already at the scene when the crash occurred. *See* 739 N.W.2d 850, 854−55 (Iowa 2007).

---

[4] Hennings cites no part of the record to support that assertion. *See* Iowa Rs. App. P. 6.903, .904(4). And on our review, we cannot find that any officer directed her to run blocks away from the accident scene.

In response, the State quotes a long passage from the district court's order denying the new-trial motion. But the State does not zero in on the elements challenged by Hennings. Nor does it address *Tarbox*.

Despite those omissions in the State's response, we find no abuse of discretion. The court highlighted Officer Lohnes's dash cam video, admitted as an exhibit, to show Hennings's flight from the crash scene. Indeed, Lohnes saw someone running at "a dead sprint" away from the accident when he first arrived. When he learned from witnesses that the runner had been driving the van, he set out to find her. He circled his patrol car around and, within minutes, found Hennings in a nearby yard. The district court could rely on that evidence to conclude that Hennings did not remain at the scene, though she could have, and that she left without providing anyone with identifying information. *See State v. Sebben*, 185 N.W.2d 771, 774 (Iowa 1971) (stating that the "manifest intent" of section 321.261 was to prevent motorists involved in personal injury accidents from evading liability, civil or criminal, by escaping before their identify can be established). The court properly exercised its discretion in finding the jury's verdict was supported by the greater weight of the evidence.

## C. One-Homicide Rule

Finally, Hennings contends the district court violated the one-homicide rule by entering judgment on both homicide by intoxicated operation and homicide by reckless driving. The State agrees. We thus "annul[] and set aside" her conviction for homicide by reckless driving. *See State v. Wissing*, 528 N.W.2d 561, 567 (Iowa 1995). And we remand for entry of a new sentencing order reflecting that change.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**