# In the Iowa Supreme Court

No. 24–1991

Submitted February 18, 2026—Filed May 29, 2026

**Jerry Hayes,**

Appellant,

vs.

**Christian Retirement Homes, Inc.,** d/b/a **Ridgecrest Senior Living Center,** and **West Bend Mutual Insurance Co.,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, judge.

A claimant seeks further review of a court of appeals decision that affirmed the district court's decision upholding the workers' compensation commissioner's denial of workers' compensation benefits. **Decision of Court of Appeals Affirmed in Part and Vacated in Part; District Court Judgment Affirmed.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Nicholas L. Shaull and Bryant A. Engbers of Spaulding & Shaull, P.L.C., Des Moines, for appellant.

Michael S. Roling and Morgan R. Todd Borron of Peddicord Lillis, LLP, West Des Moines, for appellees.

**Waterman, Justice.**

We granted further review in this case to address a recurring issue, namely, when the workers' compensation commissioner rules against a claimant and necessarily rejects an argument without specifically discussing it, does the claimant have to file a motion for rehearing to preserve error on that argument for appellate review? At every level, from the deputy commissioner to our court, the claimant in this case argued that his employer as a matter of law should be bound by the opinion of the employer's chosen treating physician in deciding whether his on-the-job accident caused a permanent disability. The employer obtained and relied on a second medical opinion to dispute permanency, and the commissioner, as factfinder, relied on that second opinion to deny benefits without addressing the claimant's legal argument. The district court affirmed. The court of appeals determined that the claimant failed to preserve error on that legal argument by not filing a motion for rehearing to elicit a specific ruling on it. The court of appeals, determining that the decision was supported by substantial evidence, affirmed the agency's denial of the claim.

On our review, we hold that the claimant preserved error at the agency level when he argued that the employer was bound by the findings of its treating physician. The agency necessarily rejected that legal argument when it relied on another physician's opinion to deny benefits. A motion for rehearing was not required. On the merits, we hold that employers are not necessarily bound by a causation opinion of a treating physician they select when another medical expert who examined the claimant provides a contrary opinion. We affirm the commissioner's decision as supported by substantial evidence.

**I. Factual and Procedural Background.**

The employer, Christian Retirement Homes, Inc., doing business in Davenport as Ridgecrest Senior Living Center (Ridgecrest), hired Jerry Hayes in July 2021 to work as a dishwasher. Among other duties, the written job description stated that the position entailed:

> Routinely engag[ing] in light to medium physical activity associated with moving foodstuffs, pushing and pulling carts and racks, lifting institutional size cooking equipment, and operating kitchen equipment. Routinely lift[ing] up to 25 lbs. Occasionally lift[ing] up to 50 lbs. while moving bulk food items and pushing/pulling loaded food carts and racks.

Before he began working for Ridgecrest, Hayes underwent a physical examination with Dr. Christopher Crome, and Hayes filled out an employee health examination record form. On that form, Hayes noted that he had "a little back pain."

In fact, Hayes had a long history of back pain, including a back injury that required surgery in 1999, preexisting lumbar disc disease and chronic neck and back pain, a back injury attributable to a 2014 car accident, leg and back pain resulting from a fall down stairs in 2015, additional back pain with radiating pain into his legs attributable to a 2017 car accident, a head injury and back pain from a 2018 car accident, a permanent lifting restriction of twenty pounds, degenerative anterolisthesis of the L5 vertebra, and bulging discs. After Dr. Crome cleared him for work, Hayes, then age sixty-seven, started at Ridgecrest on July 29, 2021.

On September 12, Hayes was taking out the garbage when he tripped and fell onto his back. Initially, Hayes rebounded and felt no pain, but eight days later, he filled out an incident report and was sent to Genesis Hospital for

treatment. X-rays of Hayes's lower spine showed no new injuries, and Genesis referred Hayes for physical therapy.

On October 1, Hayes returned to Ridgecrest, where he was assigned "light duty." A few days later, Hayes underwent a computed tomography (CT) scan, which showed anterolisthesis, foraminal stenosis (compression of the spinal nerves caused by a narrowing of the neural canals), and bulging discs.

On November 10, Hayes, still suffering from lumbar and leg pain, sought further treatment. Ridgecrest directed Hayes to Dr. Michael Dolphin at Orthopedic Specialists in Davenport. Dr. Dolphin is a board-certified orthopedic surgeon. Dr. Dolphin reviewed Hayes's recent medical history, ordered a CT myelogram (a scan of the spinal nerves), and instructed Hayes to stop working. Just over a week later, Dr. Dolphin permitted Hayes to return to work, with a ten-pound lift limit. Hayes attempted to work but said it exacerbated his symptoms, and on November 23, Dr. Dolphin took Hayes off work altogether.

On December 16, Hayes underwent the CT myelogram recommended by Dr. Dolphin. Dr. Dolphin reviewed the results with Hayes on December 28. The scan showed herniation of Hayes's spinal discs, foraminal stenosis, and degenerative disc disease. Dr. Dolphin recommended that Hayes undergo back surgery, specifically a fusion of the L4 and L5 vertebrae and a posterior laminectomy of the L3, L4, and L5 vertebrae.

Before authorizing the surgery, Ridgecrest requested that Dr. Cassim Igram perform an independent examination of Hayes. Dr. Igram is a board-certified orthopedic surgeon practicing at the University of Iowa Hospitals and Clinics. On April 27, 2022, Dr. Igram reviewed Hayes's complete medical history, compared his CT scans from 2019 to those from 2021, and opined that Hayes suffered from chronic lower back pain, which was temporarily inflamed

by his September fall. But according to Dr. Igram, that temporary injury was resolved, and any further treatment was related to Hayes's preexisting chronic back pain.

Dr. Dolphin and Dr. Igram issued dueling letters opining as to the cause of Hayes's injury. Dr. Dolphin stated that Hayes's September fall "more likely than not represented a substantial causal, contributing or aggravating factor in [Hayes's] severe low back pain." Dr. Igram, on the other hand, concluded that Hayes did not need additional treatment for the September 12, 2021, fall and attributed no permanent disability to that fall.

Dr. Dolphin again evaluated Hayes on June 28; again, he recommended surgery. On September 12, Hayes underwent surgery. The cost of the surgery was paid for by Hayes's health insurance because the workers' compensation insurer for Ridgecrest disputed causation. On April 11, 2023, Dr. Dolphin opined that Hayes had a 23% whole-body impairment rating.

Hayes applied for workers' compensation benefits. Ridgecrest stipulated that Hayes sustained a work-related injury that caused a temporary disability. The parties disputed whether Hayes's fall on September 12, 2021, caused a permanent disability. Hayes relied on Dr. Dolphin's medical opinions to argue that he had sustained a permanent work-related injury that entitled him to an award of permanent partial disability benefits, alternative medical care, payment of his reasonable medical expenses, and reimbursement for costs incurred for Ridgecrest's independent medical exam. Undergirding Hayes's position was his argument that Ridgecrest was bound by the medical conclusions of its chosen treating physician, Dr. Dolphin. Ridgecrest relied on the opinions of Dr. Igram. Hayes's case was fully submitted to the workers' compensation commission on June 13.

On December 6, a deputy commissioner issued an arbitration decision denying Hayes's claim for permanent disability benefits. The deputy, who heard Hayes testify live, specifically found that he lacked credibility because he minimized his prior back problems and had not been forthcoming about his medical history. The deputy also found Dr. Igram's testimony "more reliable" because he "had full knowledge of claimant's medical history," which Dr. Dolphin lacked, and because Dr. Igram relied on CT scans taken before Hayes fell at Ridgecrest, which Dr. Dolphin also lacked. The deputy described Dr. Igram's findings on the CR scans, causation, diagnosis, and maximum medical improvement (MMI):

> [Dr. Igram] compared both pre- and post-injury CTs which showed no structural difference. The large disk herniation at L4-L5 was present on both pre- and post-September 12, 2021, CT scans. It was the disk herniation that necessitated the surgery. Dr. Igram diagnosed claimant with chronic back pain with underlying degenerative disease and set claimant's MMI date as of April 27, 2022, with no ratable injury.

(Citation omitted.) The deputy relied on Dr. Igram's opinion on medical causation to deny Hayes's claim for permanent disability benefits. The deputy did not specifically address Hayes's legal argument that Dr. Dolphin's opinion should control because Ridgecrest chose him to treat Hayes.

Hayes pursued an intra-agency appeal, requesting that the commissioner overturn the decision of the deputy commissioner. The commissioner affirmed the deputy's decision without discussing Hayes's argument that Dr. Dolphin's opinion was binding on Ridgecrest. Hayes filed this action for judicial review of the agency's decision.

On judicial review, Hayes argued that the commissioner erred by not holding Ridgecrest to the opinion of its chosen treating physician, Dr. Dolphin. The district court acknowledged Hayes's argument, rejected it, and upheld the

commissioner's denial of benefits as supported by substantial evidence. Hayes appealed, and we transferred the case to the court of appeals.

The court of appeals panel affirmed the district court's decision. The panel's decision rested on two pillars: (1) Hayes did not preserve error on his argument that Ridgecrest was bound by Dr. Dolphin's opinions because he did not file a petition for rehearing at the agency for a specific ruling on that point, and (2) the district court correctly determined that substantial evidence supported the commissioner's decision. Hayes applied for further review, which we granted.

**II. Standard of Review.**

Hayes seeks reversal of the commissioner's decision on the issue of medical causation. "Our decision is controlled in large part by the deference we afford to decisions of administrative agencies." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844 (Iowa 2011). "Medical causation presents a question of fact that is vested in the discretion of the workers' compensation commission." *Id.* "We will therefore only disturb the commissioner's finding of medical causation if it is not supported by substantial evidence." *Id.* at 845.

The Code defines substantial evidence as: "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(*f*)(1) (2024). "Evidence is not insubstantial merely because different conclusions may be drawn from the evidence." *Pease*, 807 N.W.2d at 845. "[E]vidence may be substantial even though we may have drawn a different conclusion as fact finder." *Id.* "Our task, therefore, is not to determine whether the evidence supports a different finding; rather, our task is

to determine whether substantial evidence, viewing the record as a whole, supports the findings actually made." *Id.*

"We review the commissioner's 'legal interpretations of Iowa Code chapter 85 for errors at law rather than giving deference to those interpretations.'" *Mid Am. Constr. LLC v. Sandlin*, 2 N.W.3d 838, 846 (Iowa 2024) (quoting *Gumm v. Easter Seal Soc'y of Iowa, Inc.*, 943 N.W.2d 23, 28 (Iowa 2020)).

### III. Analysis.

We must decide whether Hayes preserved error on his claim that Ridgecrest was bound by the medical opinions of its chosen treating doctor, and whether the commission's decision was supported by substantial evidence. We determine that Hayes preserved error, and, on the merits, we reject his claim that Ridgecrest was bound by Dr. Dolphin's medical opinions. We then determine that substantial evidence supports the commissioner's decision.

**A. Error Preservation.** The contested issue at the agency was whether Hayes sustained a permanent disability because of his fall at Ridgecrest. One argument Hayes made at the agency in support of his position was that Ridgecrest must be bound by Dr. Dolphin's opinion on causation because Ridgecrest selected him to treat Hayes. The agency did not expressly address that argument in its written decision. But the agency implicitly and necessarily rejected that argument when it denied Hayes's claim for permanent disability benefits by relying instead on the conflicting opinions of Dr. Igram.

Hayes renewed his argument in district court. The district court acknowledged that argument, rejected it as legally unsound, and went on to affirm the agency decision as supported by substantial evidence. When Hayes renewed his argument on appeal, Ridgecrest did *not* argue that he failed to preserve it; rather, its appellate brief agreed Hayes preserved error on the

contested issues of "causation and, compensability regarding alleged permanent disability." The court of appeals, on its own, determined that Hayes failed to preserve error because he did not file a motion for rehearing at the agency to get a specific ruling on his argument that Dr. Dolphin's opinion was binding on Ridgecrest. We disagree that such a motion was needed to preserve error on that point.

"We have held a party preserves error on an issue before an agency if a party raises the issue in the agency proceeding before the agency issues a final decision and both sides have had an opportunity to address the issue." *Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 647 (Iowa 2013). That happened here. Hayes raised the issue of whether his September 2021 fall caused a permanent disability, and Ridgecrest had an opportunity to address that issue, including Hayes's supporting argument that Ridgecrest was bound by the causation opinion of the treating physician it selected.

A party must file a motion for rehearing only when it raises an *issue* before the agency, and the agency fails to rule on that *issue*. As we put it:

> When an agency fails to address an issue in its ruling and a party fails to point out the issue in a motion for rehearing, we find that error on these issues has not been preserved. Our respect for agency processes in administrative proceedings is comparable to that afforded to district courts in ordinary civil proceedings. Just as we do not entertain issues that were not ruled upon by the district court and that were not brought to the district court's attention through a proper posttrial motion, *Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002), we decline to entertain issues not ruled upon by an agency when the aggrieved party failed to follow available procedures to alert the agency of the issue.

*KFC Corp. v. Iowa Dep't of Revenue*, 792 N.W.2d 308, 329 (Iowa 2010). But here, the *issue* to be decided by the agency was whether Hayes suffered a permanent

disability. The agency decided that issue. Hayes lost and was entitled to renew his supporting arguments on judicial review, and he did so.

Our cases distinguish "between the situation where error was preserved even though 'the record or ruling on appeal contains incomplete findings or conclusions,' and the situation where the issue was 'not considered by' the district court and thus error was not preserved." *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 539–40 (Iowa 2002)). In our view, this case falls in the former category: the agency's decision denying benefits "contains incomplete . . . conclusions," *id.*, in that it failed to specifically reject in writing Hayes's argument that Ridgecrest was legally bound by the permanency opinion of its chosen physician. But the agency necessarily rejected that argument when it relied instead on the opposing opinion of Dr. Igram. *Cf. Meier*, 641 N.W.2d at 539 ("[W]e assume the district court rejected each defense to a claim on its merits, even though the district court did not address each defense in its ruling."). The court of appeals applied our error preservation rules too narrowly. *See State v. Childs*, 898 N.W.2d 177, 181 (Iowa 2017) (collecting cases explaining that error is preserved when the district court necessarily rejects an argument without discussing it).

We conclude error was preserved. A contrary holding would trigger unproductive motions for rehearing any time the agency failed to specifically address every supporting argument made by the party losing an issue.

**B. Was Ridgecrest Bound by Dr. Dolphin's Medical Opinions?** Because we determine that Hayes preserved error, we now address the merits of his argument that Ridgecrest, by referring Hayes to Dr. Dolphin for treatment, was bound by Dr. Dolphin's opinions.

Hayes primarily relies on prior agency decisions applying Iowa Code section 85.27(4) (2021) governing alternate medical care. For example, he cites the agency decision in *Gardner v. Menards, Inc.*, which concluded that the employer is not authorized "to interfere with the medical judgment of its own treating physician." Iowa Workers' Comp. Comm'n No. 5054642.03, 2024 WL 5154673, at *3 (Dec. 10, 2024). But section 85.27(4) and agency decisions applying it are inapplicable to this contested case proceeding. Section 85.27(4) provides an expedited procedure to determine the course of treatment when the employer does not contest liability. *See* Iowa Admin. Code r. 876—4.48. By contrast, in contested case arbitration hearings, the employer may contest causation, and the commissioner, as trier of fact, "has a duty to weigh the evidence and measure the credibility of witnesses." *Pease*, 807 N.W.2d at 845. Medical causation is a question of fact vested in the discretion of the commissioner. *Id.* at 844–45. Hayes's position would interfere with the commissioner's factfinding role by requiring approval of the opinion of the employer's chosen treating physician, regardless of the conflicting opinions of another examining physician.

In any event, Iowa courts are not bound by the legal conclusions in agency decisions. Rather, "[t]he controlling legal standards are those set out in the workers compensation statutes and in this court's opinions, not in prior agency decisions." *Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 331–32 (Iowa 2005) (per curiam); *see also Keystone Nursing Care Ctr. v. Craddock*, 705 N.W.2d 299, 304 n.2 (Iowa 2005) ("[T]he commissioner's final decision is judged against the backdrop of the workers' compensation statute and the Iowa appellate cases interpreting it, not previous agency decisions.").

Hayes also relies on our cases recognizing the obligation of workers' compensation insurers to act in good faith. *See, e.g., Thornton v. Am. Interstate Ins.*, 897 N.W.2d 445, 461 (Iowa 2017). Hayes suggests that an employer cannot in good faith disavow the causation opinion of the doctor it hired to treat its injured employee. But Hayes did not bring a bad-faith claim,[1] nor did the commissioner award penalty benefits. Ridgecrest prevailed on the merits of Hayes's claim for permanent disability benefits, and bad-faith cases such as *Thornton* are inapposite.

Hayes cites no on-point Iowa appellate court decision holding that an employer in a contested case proceeding is bound by the causation opinion of the physician the employer selected to treat its employee. And we find no controlling statutory provision requiring that result in contested case hearings.

Hayes argues that Iowa Code section 85.39(1), governing independent medical examinations, supports his view. We disagree. Section 85.39(1) provides in relevant part,

> After an injury, the employee, if requested by the employer, shall submit for examination at some reasonable time and place and as often as reasonably requested, to a physician *or physicians* authorized to practice under the laws of this state or another state, without cost to the employee; but if the employee requests, the employee, at the employee's own cost, is entitled to have a physician or physicians of the employee's own selection present to participate in the examination.

(Emphasis added.) Nothing in section 85.39(1) binds the employer to the medical causation opinion of the *treating* physician that the employer chose earlier. To

---

[1]"To establish a first-party bad-faith claim against a workers' compensation insurer, the plaintiff must show '(1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis.' " *Thornton*, 897 N.W.2d at 461–62 (quoting *McIlravy v. N. River Ins.*, 653 N.W.2d 323, 329 (Iowa 2002)). Hayes had no viable bad-faith claim against Ridgecrest or its workers' compensation insurer because there was a reasonable basis for denying benefits based on the opinion of Dr. Igram.

the contrary, section 85.39(1) confirms that the employer and claimant alike may seek another opinion from a qualified physician. It is up to the commissioner, as factfinder, to determine which medical opinions are more persuasive.

We hold that the employer in a contested case proceeding is not bound by the medical causation opinion of the employer's chosen treating physician when a contrary medical opinion is supported by the record.

**C. Substantial Evidence.** Finally, we turn to Hayes's fact-bound argument that the commissioner's decision was not supported by substantial evidence. The court of appeals and district court determined that substantial evidence supported the commissioner's decision. We agree.

The deputy commissioner relied on Dr. Igram's medical opinions over Dr. Dolphin's. According to Dr. Dolphin's notes, Hayes reported having lumbar surgery in 1999 but denied any recent injuries. Hayes also informed Dr. Dolphin about his previous heart attack and about a car crash injury from January 2018. Hayes testified that he never told Dr. Dolphin about the lifting restrictions that Dr. Crome had imposed.

Dr. Igram had the more complete picture of Hayes's medical history. He reviewed all the relevant records, including the following entries: (1) Hayes's 1999 back surgery, (2) Hayes's 2003 struggles with chronic back and leg pain, (3) Hayes's injuries from a 2014 car accident, (4) Hayes's injuries from a January 2015 fall down the stairs, (5) Hayes's injury from a March 4, 2015, slip and fall, (6) Hayes's struggle to walk due to lower back pain in November 2016, (7) Hayes's injuries from a 2017 car crash, (8) Hayes's injuries from a January 2018 car crash, (9) Hayes's permanent work restrictions—imposed by Dr. Crome—in December 2018, (10) Hayes's April 2019 reports of chronic pain in his left knee,

(11) Hayes's prescriptions—written by Dr. Crome—for medications to combat his chronic back pain. Most of that history was not disclosed to Dr. Dolphin.

The deputy commissioner who heard Hayes testify made detailed credibility findings. As the district court noted,

> The deputy found that Hayes lacked credibility with some of the reports he made on his medical history, particularly minimizing back pain prior to this fall on September 12, 2021. She also noted that he was not forthcoming regarding his health history when hired by the employer. Her overall assessment of his credibility led to a finding that his testimony was "troubling."

Dr. Igram also studied the CT scans of Hayes's spine taken in 2019 and compared them to the CT scans taken after Hayes's fall at Ridgecrest. The herniated disc that Dr. Dolphin opined required surgery because of the 2021 fall at Ridgecrest was already present on the scan in 2019. Dr. Igram saw no structural change in those scans. Dr. Dolphin never saw the 2019 CT scans. Dr. Igram's opinions were well-supported by a review of Hayes's complete medical history and CT scans before and after the September 2021 fall. Dr. Dolphin did not have the complete picture. The deputy commissioner credited Dr. Igram's testimony and denied Hayes's request for permanency benefits. The commissioner adopted her findings and conclusions in the agency's final decision.

On our review, we do not ask whether we would have made the same decision as the commissioner; we only ask whether the evidence in the record supports the decision made. *City of Des Moines v. Emp. Appeal Bd.*, 722 N.W.2d 183, 195 (Iowa 2006). And, as our court of appeals has aptly noted: "A case reversing final agency action on the ground the agency's action is unsupported by substantial evidence or is irrational, illogical, or wholly unjustifiable is the Bigfoot of the legal community—an urban legend, rumored to exist but never

confirmed." *McComas-Lacina Constr. v. Drake,* No. 15–0922, 2016 WL 2744948, at *1 (Iowa Ct. App. May 11, 2016) (McDonald, J.). The commissioner could rely on Dr. Igram's opinion to deny Hayes's claim for permanent disability benefits. His medical opinion provided substantial evidence supporting the agency's decision. We affirm the decision of the court of appeals and the district court's judgment upholding the agency decision. We agree with the court of appeals that Hayes's claims for additional relief lack merit.[2]

### IV. Conclusion.

For the foregoing reasons, we affirm in part and vacate in part the decision of the court of appeals. We affirm the district court judgment that upheld the commissioner's decision.

**Decision of Court of Appeals Affirmed in Part and Vacated in Part; District Court Judgment Affirmed.**

---

[2]Hayes seeks reimbursement for the costs of his independent medical examination. But the employer is "only liable to reimburse an employee for the cost of an examination . . . if the injury for which the employee is being examined is determined to be compensable under this chapter." Iowa Code § 85.39(2). Because we affirm the commissioner's denial of benefits, Ridgecrest is not liable to reimburse Hayes.